IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **IN RE:**<br>**SUBPOENA ISSUED TO TENNESSEE DEPARTMENT OF CORRECTION BY GERALD ROSS PIZZUTO, JR.** | ) | |
| **GERALD ROSS PIZZUTO, JR.,**<br><br>**Plaintiff,**<br><br>**v.**<br>**BREE DERRICK[1] et al.,**<br><br>**Defendants.** | ) | **Case No. 3:25-mc-00003**<br>**Judge Aleta A. Trauger** |

**MEMORANDUM & ORDER**

Magistrate Judge Jeffery Frensley entered an Order (Doc. No. 15), granting the Tennessee Department of Correction's Motion to Quash (Doc. No. 1) a third-party subpoena (Doc. No. 1-1) issued to it by Gerald Pizzuto in his underlying civil case against the Director and Deputy Director of the Idaho Department of Correction ("IDOC") and the Warden of the Idaho Maximum Security Institution, all in their official capacities. *See* Second Amended Complaint ("SAC"), *Pizzuto v. Derrick*, No. 1:21-cv-000359 (D. Idaho July 26, 2024), ECF No. 153.

Now before this court is Pizzuto's Motion for Review of Nondispositive Order of Magistrate Judge. (Doc. No. 16.)[2] For the reasons set forth herein, the motion will be denied.

[1] Bree Derrick has been substituted in for Josh Tewalt in the underlying litigation, as she is now the Director of the Idaho Department of Correction. Consequently, Derrick is automatically substituted for Tewalt in this action. Fed. R. Civ. P. 25(d).

[2] Rule 72(a) directs parties to file and serve "objections" to a magistrate judge's order on a non-dispositive matter, but this court's Local Rules, for docket-management reasons, direct parties objecting to a non-dispositive magistrate judge order to file a "motion for review." L.R. 72.01(a).

## I. STANDARD OF REVIEW

Within fourteen days after being served with a magistrate judge's order on a matter not dispositive of a party's claim or defense, any party "may serve and file objections" to the order. Fed. R. Civ. P. 72(a). The district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any [nondispositive] pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

"This standard requires the District Court to review findings of fact for clear error and to review matters of law *de novo*." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019). A legal conclusion is contrary to law if it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* "A [factual] finding is 'clearly erroneous' when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (citation omitted).

Review under the "clearly erroneous" standard "provides considerable deference to the determinations of magistrates." *Bonasera v. Penn. Nat'l Mut. Cas. Ins. Co.*, No. 2:19-CV-3817, 2021 WL 1785618, at *1 (S.D. Ohio May 5, 2021) (quoting *Langenfeld v. Armstrong World Indus., Inc.*, 299 F.R.D. 547, 550 (S.D. Ohio 2014)) (internal quotation marks omitted). Magistrate judges "have broad discretion to regulate nondispositive matters." *Sherrod v. Enigma Software Grp. USA, LLC*, No. 2:13-CV-36, 2014 WL 309948, at *2 (S.D. Ohio Jan. 28, 2014) (quoting *Carmona v. Wright*, 233 F.R.D. 270, 276 (N.D.N.Y. 2006)). Reversal is typically warranted only if that discretion is abused. *Id.*; *see also* 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3069 (3d ed. 1998, updated May 21, 2025) ("In sum, it is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the district judge.").

## II. BACKGROUND

In the underlying lawsuit, Pizzuto brings a single claim under 42 U.S.C. § 1983 against IDOC officials for equitable, declaratory, and injunctive relief. The claim is based on "violations and threatened violations of his constitutional rights in connection with [Idaho's] effort to execute him." SAC ¶ 1. The SAC includes a section entitled "General Problems with Executions," *see id.* at 5, within which is a subsection regarding "Other States' Use of Unreliable Sources for Execution Drugs," *id.* at 6 & ¶¶ 45–61, and another subsection regarding "Idaho's Conduct in 2011 and 2012," *id.* at 8 & ¶¶ 62–133, alleging generally that Idaho officials' past conduct "increas[es] the risk that it will acquire unreliable drugs," *id.* ¶ 96. These allegations, however, appear to be largely immaterial to the only actual claim for relief in the SAC: that IDOC's use of pentobarbital for Pizzuto's execution "creates a substantial risk of serious pain and suffering because of his health conditions and medical history, amongst other factors," in violation of his Eighth Amendment right to be free from cruel and unusual punishment. *Id.* ¶ 160.

In support of this claim, the SAC, first, enumerates Pizzuto's health conditions that increase his risk of suffering, including coronary artery disease, terminal bladder cancer, and type 2 diabetes. He alleges that his heart condition, the medications he takes that are likely to interact adversely with pentobarbital, and inaccessible veins all increase his risk of suffering through execution by pentobarbital, *id.* ¶¶ 167–271, but he does not allege that the use of pentobarbital for executions, *per se*, is unconstitutional.[3]

Second, Pizzuto alleges "flaws in the Protocol" implemented by IDOC in carrying out executions, pointing in particular to IDOC's failure to require that the individuals administering

---

[3] To the contrary, he notes that "one would not expect the average inmate to be at risk of the same pain at another pentobarbital execution" as he will be, due to his underlying conditions. SAC ¶ 162.

the Protocol have proper medical training, the Director's ability to revise the Protocol at any time, and the lack of oversight by any independent body over the drafting or revision of the Protocol. *Id.* ¶¶ 272–313.

Third, Pizzuto alleges problems with the "physical layout of the execution chamber" that will inhibit the ability of the medical team conducting the execution to "directly observe Mr. Pizzuto while the lethal chemicals are injected into his body." *Id.* ¶¶ 314–15.

Fourth, he alleges that the "potential use of a central line"—that is, placement of an IV catheter in a central line for the purpose of administering the chemicals"—during his execution further increases the risk of an unconstitutional level of suffering, particularly because the placement of a central line is a painful and complicated surgical procedure that no member of the medical team is competent through training, qualifications, and experience to perform. *Id.* ¶ 331–32, 339–77.

Finally, Pizzuto "identifies the firing squad as a more humane alternative to a pentobarbital execution." *Id.* ¶ 378.

In connection with that lawsuit, Pizzuto served the subject Subpoena on the Tennessee Department of Correction ("TDOC") in February 2025, requesting the production of

> All DOCUMENTS generated between December 1, 2024 and the present REGARDING any PENTOBARBITAL that YOU obtained for use or potential use in executions, including but not limited to testing information, such as certificates of analysis; purchase receipts; purchase orders; invoices; Drug Enforcement Administration forms and other regulatory records; package inserts; chain-of-custody documents; temperature logs; instructions for storage and transportation; COMMUNICATIONS with the supplier, distributor, and/or manufacturer; and so forth.

(Doc. No. 1-1 at 7.)[4]

[4] The capitalized terms in the request are defined in Attachment A to the Subpoena.

TDOC promptly filed its Motion to Quash in this court. Following exhaustive briefing on the motion, the Magistrate Judge issued the Order granting the Motion to Quash. (Doc. No. 15.) The Magistrate Judge found, first, that sovereign immunity did not protect TDOC from its obligation to respond to a third-party subpoena and that the creation of a new common law "participant-supplier privilege" is not warranted. (*Id.* at 8, 10–12.) However, under the "undue burden" standard set forth in Federal Rule of Civil Procedure 45, the Magistrate Judge found that the documents sought from TDOC bore no relevance to Pizzuto's actual claim against IDOC and that whatever slight relevance the requested documents might have was outweighed by the burden that would be imposed on TDOC if it were required to respond. The magistrate judge also found that a protective order would not be sufficient to protect TDOC under the facts of this case.

Pizzuto contends that (1) the magistrate judge's "relevancy analysis was clearly erroneous and contrary to law because the magistrate judge required Mr. Pizzuto to *prove* the requested material was connected to his underlying claim while simultaneously failing to deal with the evidence making that connection"; and (2) the undue burden analysis was contrary to law. (Doc. No. 17 at 1–2.) TDOC has filed a Response in opposition to the motion. (Doc. No. 20.)

**III. DISCUSSION**

Rule 45 of the Federal Rules of Civil Procedure governs third-party subpoenas. Rule 45 permits parties in legal proceedings to "command" a non-party, through a subpoena, to appear at a certain time and place to testify or produce documents. Fed. R. Civ. P. 45(a)(1)(A)(iii). Under Rule 45, the court must, upon timely motion, quash or modify a subpoena that subjects a non-party to "undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). "The party seeking to quash a subpoena bears the ultimate burden of proof." *Schnatter v. 247 Grp., LLC*, 343 F.R.D. 325, 329 (W.D. Ky. 2022) (quoting *Hendricks v. Total Quality Logistics*, 275 F.R.D. 251, 253 (S.D. Ohio 2011)).

"Undue burden is to be assessed in a case-specific manner considering 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quoting *Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)). Generally, "courts must 'balance the need for discovery against the burden imposed on the person ordered to produce documents,' and the status of that person as a non-party is a factor." *Id.* (quoting *Am. Elec. Power*, 191 F.R.D. at 136).

Courts in the Sixth Circuit have held that "the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Maas v. JTM Provisions Co.*, No. 1:23-cv-00076-JPH, 2025 WL 815431, at *5 (S.D. Ohio Mar. 13, 2025) (quoting *Hendricks*, 275 F.R.D. at 253). Under Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). This language is broadly construed by the federal courts to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "When faced with questions over, or disputes about, what information or documents may be obtained based on their relevancy, it is axiomatic that the trial court is afforded broad discretion to determine the boundaries of inquiry." *Schnatter*, 343 F.R.D. at 329 (citations omitted).

**A. Relevance**

The court finds, in short, that the Magistrate Judge did not abuse his discretion in concluding that Pizzuto's document request amounted to a "fishing expedition" and that the question of whether there are "chemical flaws in TDOC's drugs" is not relevant to Pizzuto's claims in the underlying litigation. As the Order stated:

> The weak connection between Mr. Pizzuto's suit and the subpoena before this Court is demonstrated in Mr. Pizzuto's own filing: *If* Tennessee and Idaho have the same supplier and *if* there are chemical flaws in Tennessee's drug, then there *might* be an increased *chance* of deficiencies in Idaho's drug. This is, quite simply, the very definition of a fishing expedition in discovery. Further, even if Tennessee and Idaho were to have the same source of drugs, something which is entirely undetermined, information regarding Tennessee's execution protocol would still have little relevance to Mr. Pizzuto's pending execution in Idaho.

(*Id.* at 13–14 (citing Doc. No. 8 at 8–10).) The Magistrate Judge noted that, although Pizzuto claims *not* to be "seeking the identity of Tennessee's lethal injection chemical supplier, his entire argument for relevancy stems from the extremely speculative claims that Tennessee and Idaho have identical suppliers," which argument legitimizes Tennessee's concerns about the "circuitous disclosure of confidential information." (*Id.* at 14–15.)

The court has conducted its own review of Pizzuto's sole claim in this litigation, as set forth above. Pizzuto's objections that the Magistrate Judge ignored his clear "evidence" that Tennessee and Idaho have obtained their pentobarbital from the same source is simply beside the point. It is clear from the face of the SAC that, although Pizzuto sets out allegations regarding "Other States' Use of Unreliable Sources for Execution Drugs," none of those allegations has anything to do with his as-applied challenge to Idaho's execution protocol in his case, which asserts that the use of pentobarbital to effect his execution amounts to cruel and unusual punishment based on his particular underlying medical conditions and IDOC's execution protocol. Accordingly, Tennessee's process of procuring pentobarbital has no possible relevance to his actual claim, irrespective of whether Tennessee and Idaho procured pentobarbital for use in executions from the same source, as Pizzuto believes.

Pizzuto, as he states in his motion, is seeking information about Tennessee's execution *drugs*, rather than Tennessee's protocol, and he insists that, if the drugs come from the same supplier as Idaho's drugs, then his request for documents is relevant to the reliability of Idaho's

drugs. (Doc. No. 17 at 8.) But Pizzuto's claims in the underlying case are not about the reliability of Idaho's drugs; it is about Idaho's protocol. To the extent Pizzuto is seeking to expand the scope of his claim in the Idaho case, that makes it all the more clear that his request here is a "fishing expedition." Information about the source of Tennessee's drugs simply has no bearing on, and does not appear reasonably likely to lead to information that could bear on, the issues in Pizzuto's underlying case—involving his medical conditions, the IDOC execution team's lack of medical qualifications, and the layout of the execution chamber.

**B. Undue Burden**

The court must "balance the need for discovery against the burden imposed on [TDOC] to produce documents," keeping in mind TDOC's status as a non-party. *In re: Mod. Plastics Corp.*, 890 F.3d at 251. Because the need for discovery here is minimal, given the remote connection between the information sought and Pizzuto's underlying claim, any burden on TDOC would be disproportionate to that need. For the same reason, the Magistrate Judge did not abuse his discretion in determining that the production of documents under a protective order was unwarranted. As the court stated:

> Due to the certain irrelevance of Tennessee's execution protocol to Mr. Pizzuto's claim, as well as the burden [imposed on] the Department in carrying out executions, the Court will not consider a protective order in depth. It is not true that a protective order could never be sufficient when a death penalty defendant seeks discovery regarding execution protocols, but . . . in this case, Mr. Pizzuto's request—even with a protective order in place—would be disproportionate to the needs of his suit against the Idaho Department of Correction.

(Doc. No. 15 at 18.) Moreover, considering what type of protective order would be required to safeguard TDOC's interest in protecting the identity of its supplier, the court concluded that, "[g]iven the general irrelevance of Mr. Pizzuto's subpoena," any information that fell outside the scope of the protective order would be "entirely ancillary to Mr. Pizzuto's suit against the Idaho

Department of Correction" and, therefore, "would be disproportionate to the needs of his case." (Doc. No. 15 at 20.)

The Magistrate Judge did not fail to apply or misapply the relevant law; nor did he reach a clearly erroneous finding of fact. Moreover, the court is persuaded by Pizzuto's Response to the Motion to Quash and his objections to the Magistrate Judge's Order that Pizzuto's actual objective is to obtain information about Tennessee's "chemicals for some purpose other than his own litigation." (Doc. No. 20 at 15.) But, because there is little plausible connection between the information he seeks from TDOC and his claims against IDOC, the Magistrate Judge properly quashed the subpoena.

## IV. CONCLUSION AND ORDER

For the reasons set forth herein, the Motion for Review (Doc. No. 16) is **DENIED**.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge